IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DAMON EUGENE WALKER, | ) | |
| | ) | |
| Plaintiff, | ) | 8:04cv514 |
| | ) | |
| vs. | ) | MEMORANDUM AND ORDER |
| | ) | |
| OFFICER THOMAS, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on Filing No. 34, the Motion for Summary Judgment filed by the defendant, Officer Thomas, in her individual capacity. In his complaint, as amended, the plaintiff, Damon Eugene Walker, a former inmate at the Douglas County Correctional Center ("DCCC"), alleges that the defendant, a corrections officer at DCCC, falsely accused him of stealing or failing to return a pair of nail clippers. The defendant caused the plaintiff to be placed in lockdown (segregation), but after he had spent for days in lockdown, a hearing committee at DCCC found the plaintiff not guilty. The plaintiff also alleges that the defendant engaged in retaliatory treatment of the plaintiff in reprisal for his lawsuit against the defendant.

**Summary Judgment Standard**

The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In response, the opponent must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587

(1986) (emphasis in original). A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts." Id. at 586.

"[T]he mere existence of some alleged factual dispute between the parties is not sufficient by itself to deny summary judgment as a matter of law .... Instead, 'the dispute must be outcome determinative under prevailing law.'" Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992) (citations omitted). Accord Dico, Inc. v. Amoco Oil Co., 340 F.3d 525, 529 (8th Cir. 2003). "If the evidence is merely colorable ... or is not sufficiently probative ... summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

The court may not weigh the evidence, determine credibility, or decide the truth of any factual matter in dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249; Tatum v. City of Berkeley, 408 F.3d 543, 549 (8th Cir. 2005). However, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. at 249.

## Lockdown

The placement of the plaintiff in lockdown, while quite possibly inequitable in the circumstances, did not violate either the Due Process Clause of the Fourteenth Amendment or the Cruel and Unusual Punishment Clause of the Eighth Amendment to the United States Constitution. Therefore, insofar as the plaintiff alleges a claim for relief based on his placement in lockdown, summary judgment must be granted in favor of the defendant on that claim for the reasons explained below.

First, the placement in segregation or lockdown did not violate the Due Process Clause for two reasons. Inmates do not have a liberty interest in remaining free from segregation. Also, the plaintiff received procedural due process.

2

Liberty Interest

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." Wilkinson v. Austin, 125 S.Ct. 2384, 2393 (2005). Thus, claims regarding the right to either procedural or substantive due process must begin with identification of a protected liberty or property interest. Singleton v. Cecil, 176 F.3d 419, 424-25, 425 n. 7 (8th Cir.) (*en banc*),cert. denied, 120 S.Ct. 402 (1999). A protected liberty interest may arise from either the Due Process Clause of the United States Constitution, itself, or from a state-created statutory entitlement. Hewitt v. Helms, 459 U.S. 460, 466 (1983); Fraise v. Terhune, 283 F.3d 506, 522 (3d Cir. 2002) (citations omitted).

The Due Process Clause of its own force does not afford a prisoner a liberty interest in remaining in the general prison population. Lekas v. Briley 405 F.3d 602, 607 (7th Cir. 2005). See also Holly v. Woolfolk, 415 F.3d 678, 2005 WL 1661528 at *1 (7th Cir. 2005) ("being placed in segregation is too trivial an incremental deprivation of a convicted prisoner's liberty to trigger the duty of due process"). Accord Christianson v. Clarke, 932 F. Supp. 1178, 1182 (D. Neb. 1996) ("[T]he Due Process Clause itself does not protect any liberty interest in remaining free from administrative segregation or protective custody.").

An inmate's claim to a state-created liberty interest is governed by the Supreme Court's decision in Sandin v. Conner, 515 U.S. 472 (1995). "Sandin found no liberty interest protecting against a 30-day assignment to segregated confinement because [the assignment] did not 'present a dramatic departure from the basic conditions of [the inmate's] sentence.'" Wilkinson v. Austin, 125 S.Ct. 2384, 2394 (2005), *quoting* Sandin, 515 U.S. at 485. To demonstrate a liberty interest created by state law, the plaintiff must

3

show that the protested conditions exceed the normal range and limits of custody and impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 483-84.

In Nebraska, deprivation of good-time credit implicates a liberty interest sufficient to require due process. Dailey v. Nebraska Dept. of Corr. Servs., 578 N.W.2d 869, 873 (1998). See generally Wolff v. McDonnell, 418 U.S. 539, 557-58 (1974). However, absent periods of extraordinary duration in segregation, the Eighth Circuit has "consistently held that administrative and disciplinary segregation are not atypical and significant hardships under Sandin." Portley-El v. Brill, 288 F.3d 1063, 1065 (8th Cir. 2002). Accord Kennedy v. Blankenship, 100 F.3d 640, 642 n. 2, 643 (8th Cir.1996) (placement in punitive isolation was not an atypical and significant deprivation even though the prisoner faced restrictions in privileges regarding mail, telephone, visitation, commissary, and personal possessions). See also Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003): "We have consistently held that a demotion to segregation, even without cause, is not itself an atypical and significant hardship." The absence of contact visitation, exercise privileges, and chapel rights for 37 days did not constitute an atypical and significant hardship. Id.

Procedural Due Process

In addition, the Eighth Circuit's decisions in Ragan v. Lynch, 113 F.3d 875 (8th Cir. 1997) and Wycoff v. Nichols, 94 F.3d 1187 (8th Cir. 1996), indicate that the plaintiff received all of the procedural due process to which he was "due," because any errors during the initial placement in lockdown were cured when the hearing committee found the plaintiff not guilty of the theft and reversed the disciplinary decision upon review. In Wycoff, the plaintiff, a prisoner, received 10 days in disciplinary segregation and a loss of 90 days of good time for violation of a prison rule. Id., 94 F.3d at 1188. On administrative

4

appeal, his conviction was reversed, and his good-time credits were restored. Id. When he brought an action under 42 U.S.C. § 1983 for damages, alleging deprivation of due process, the district and appellate courts held that the administrative reversal of the disciplinary case and restoration of all good-time credits cured any due process violation that had occurred at the initial hearing. "[W]e find that the ISP's reversal of the case against Wycoff constituted part of the due process Wycoff received, and it cured the alleged due process violation based on the ISP disciplinary committee's initial decision to sanction Wycoff." Id., 94 F.3d at 1189.

Similarly, in Ragan, the inmate lost good-time credit in a disciplinary proceeding, but he later prevailed in a state court postconviction action, in which the court reversed the disciplinary conviction and restored the good-time credit. Id.,113 F.3d at 876. In the plaintiff's subsequent litigation pursuant to 42 U.S.C. § 1983 for damages, the district court granted summary judgment to the defendants. The Eighth Circuit affirmed, citing Wycoff to the effect that the plaintiff had suffered no injury, and that, even if he had, any harm had been remedied by the expungement of his disciplinary record and the return of his good-time credit.

> Regardless, Ragan has suffered no injury or, if he did, any harm suffered has already been remedied--his good-time credits have been returned and his disciplinary record expunged. **Because there was a procedure available to remedy the disciplinary committee's mistake, that error alone does not amount to a denial of due process**. Wycoff v. Nichols, 94 F.3d 1187, 1189 (8th Cir. 1996) (no due process violation in sanctioning inmate for conduct not prohibited by prison rules when appeal of discipline restored good-time credits because appeal procedure "constituted part of the due process [and] cured the alleged due process violation").

Id. at 876-77 (emphasis added).

5

Cruel and Unusual Punishment

Second, the plaintiff's placement in lockdown did not violate the Eighth Amendment. The Eighth Amendment is violated by the denial of "the minimal civilized measure of life's necessities," or by incarceration under conditions "posing a substantial risk of serious harm." Simmons v. Cook, 154 F.3d 805, 807 (8th Cir. 1998) (citation and internal quotation marks omitted).  It is the "unnecessary and wanton infliction of pain" which constitutes cruel and unusual punishment forbidden by the Eighth Amendment. Hope v. Pelzer, 122 S.Ct. 2508, 2514 (2002); Phillips v. Norris, 320 F.3d 844, 848 (8th Cir. 2003).

In evaluating the constitutionality of challenged prison conditions under Eighth Amendment standards, the duration of harsh or restrictive conditions constitutes an important factor. See, e.g., Rahman X v. Morgan, 300 F.3d 970, 974 (8th Cir. 2002). The plaintiff's confinement for four days was neither "cruel" nor "unusual" in the sense of unnecessary and wanton infliction of pain.

**Retaliation**

The plaintiff also alleges that the defendant retaliated against him for filing this lawsuit against her.  In certain circumstances, retaliation for the exercise of a constitutionally protected right may give rise to a claim on which relief may be granted, even as to a convicted prisoner.  However, the plaintiff's allegations of retaliatory treatment set out in Filing No. 29, while consisting of nasty and petty behavior no doubt annoying to the plaintiff, do not even approach wrongs of a constitutional magnitude.

**Defamation**

Finally, the plaintiff clarifies in Filing No. 38, his Response to the Defendant's Motion for Summary Judgment, that he asserts a claim of defamation (libel or slander) under Nebraska law against the defendant.  Allegations of defamation, based on injury to

6

reputation, do not state a claim for deprivation of liberty or property protected by the Due Process Clause of the United States Constitution. Siegert v. Gilley, 500 U.S. 226, 233-34 (1991); Paul v. Davis, 424 U.S. 693, 712 (1976). In addition, there exists no other independent jurisdictional basis for the plaintiff's state-law claim against the defendant.

As the plaintiff's cause of action for defamation arises under Nebraska law, the court has discretion under 28 U.S.C. § 1367(c)(3) to decline to exercise supplemental jurisdiction over claims arising under state law when the claim(s) over which the court has original jurisdiction have been dismissed. In addition, 28 U.S.C. § 1367(d) tolled the limitations period for any state law claims against the defendant while this federal case was pending. Therefore, notwithstanding the dismissal of the above-entitled action, the plaintiff may bring his defamation claim against the defendant in a state court.[1] The plaintiff's claim(s) arising under state law will be dismissed without prejudice.

THEREFORE, IT IS ORDERED:

1. That Filing No. 34, the defendant's Motion for Summary Judgment, is granted insofar as Filing No. 34 is consistent with this Memorandum and Order; and

2. That a separate judgment will be entered accordingly.

DATED this 1st day of June, 2006.

BY THE COURT:
s/Laurie Smith Camp
United States District Judge

---

[1] Pursuant to Neb. Rev. Stat. § 25-208, "[t]he following actions can only be brought within the periods stated in this section: Within one year, an action for libel and slander." The one-year limitations period for a claim of libel or slander begins to run on the accrual of the cause of action. Prokop v Hoch, 607 N.W.2d 535, 539 (Neb. 2000). "[A] cause of action for slander or libel accrues on the date of publication of the defamatory matter." The events in question occurred on or about August 27, 2004, and the plaintiff brought this action on October 13, 2004, approximately 47 days later. The statute of limitations has been tolled since October 13, 2004, but the plaintiff has only slightly more than 300 days after the date of this Memorandum and Order before the state statute of limitations on defamation claims will expire absent commencement of an action in state district court.

7